**STATE of Missouri, Respondent,**

v.

**Michael E. BUTLER, Appellant.**

**No. WD 38422.**

Missouri Court of Appeals,
Western District.

April 7, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1987.

Application to Transfer Denied
July 14, 1987.

Sean D. O'Brien, Public Defender, Justine E. Del Muro, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and GAITAN, JJ.

LOWENSTEIN, Judge.

Butler appeals his conviction for robbery and armed criminal action arguing, (1) the prosecutor improperly struck all blacks from the jury, (2) MAI–Cr2d 1.02, and 2.20 incorrectly define reasonable doubt and (3) the trial court admitted irrelevant, immaterial and prejudicial evidence.

Because Butler's first point is dispositive, only the facts relevant to that point will be set out. Butler and two others were arrested and charged in connection with the robbery of the Meyer Jewelry Store. Butler is black. The Meyer employees and most of the state's trial witnesses were white. Six blacks were among the thirty-six member jury panel at voir dire; all six were passed for cause. The prosecutor then used her six peremptory challenges to strike all the black jurors. The defense, noting the struck jurors were black, moved to quash the jury on the grounds Butler's fifth amendment due process rights and sixth amendment right to a fair and impartial jury had been violated. The motion was overruled. Butler was tried by an all-white jury, convicted of robbery and armed criminal action and sentenced to twenty-five years imprisonment.

■ At the hearing on the motion for a new trial, Butler again claimed the prosecutor violated his constitutional rights by striking all the black jurors. Relying upon *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which was decided four days after the jury verdict, the court then had the prosecutor explain why she struck the black jurors. After hearing the explanations, the court denied the motion for a new trial on the grounds *Batson* was to be applied prospectively only and alternatively, because the prosecutor had met his burden under *Batson.* Butler now brings this appeal and in his first point, reasserts his claim that the prosecution improperly excluded blacks from the jury. His reliance upon *Batson v. Kentucky* is proper since *Batson* has retroactive effect and his objection was timely raised. *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), *State v. Antwine,* No. 67720 (Mo. banc 1987).

In *Batson,* the black defendant was tried and convicted by an all white jury after the prosecutor used peremptory challenges to strike the only four blacks in the venire. The defendant had unsuccessfully objected to the strikes on sixth and fourteenth amendment grounds. *Batson,* 106 S.Ct. at 1713. The Supreme Court of Kentucky affirmed the conviction, relying upon the "near crippling burden of proof" required under *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Batson,* 106 S.Ct. at 1715–1716. On certiorari, the United States Supreme Court reversed the Kentucky Supreme Court and found the discriminatory use of peremptory challenges in a single case violates the Fourteenth Amendment. The Court held at 106 S.Ct. 1719:

> The Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the state's case against a black defendant.

In *Batson,* the Court reaffirmed its commitment to equal protection principles and noted its "unceasing efforts to eradicate racial discrimination in the procedures used to select the venire from which the individual juries are drawn." *Batson,* 106 S.Ct. at 1716. Those efforts should extend to regulation of peremptory challenges because "the Fourteenth Amendment protects an accused throughout the proceedings bringing him to justice." *Batson,* 106 S.Ct. at 1718. Moreover,

> The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude

black persons from juries undermine public confidence in the fairness of our system of justice.

*Batson,* 106 S.Ct. at 1717.

Discrimination within the judicial system is especially pernicious since it stimulates the same racial prejudice that the system and laws seek to prevent. *Batson,* 106 S.Ct. at 1717–1718.

The court then devised a procedure to enforce its holding. To make out a valid claim, the defendant must first establish a prima facie case of purposeful discrimination. This involves three steps. First, the defendant must show he is a member of a cognizable racial group and show the prosecutor used peremptory challenges to exclude members of his race. Next, the defendant may rely upon the fact that peremptory challenges permit "those to discriminate who are of a mind to discriminate." *Batson,* 106 S.Ct. at 1722 quoting *Avery v. Georgia,* 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953). Finally, the defendant must show these and other relevant circumstances raise an inference of discrimination. Relevant circumstances include a "pattern" of strikes against black jurors included in the panel as well as the prosecutor's questions and statements during voir dire examination. *Batson,* 106 S.Ct. at 1723.

Once the defendant makes the prima facie showing, the burden of proof shifts to the prosecutor to provide a neutral explanation for striking black jurors. That explanation need not be sufficient to sustain a challenge for cause. However, the prosecutor may not merely state "he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race." *Batson,* 106 S.Ct. at 1723. Nor can the prosecutor simply deny he had a discriminatory motive or merely affirm his good faith. Instead, the prosecutor must "articulate a neutral explanation related to the particular case to be tried." *Batson,* 106 S.Ct. at 1723. The explanation must be "clear and reasonably specific" and contain "legitimate reasons" for challenging the black jurors. *Batson,*

106 S.Ct. at 1723, n. 20. After the prosecutor provides an explanation, it is the trial court's duty to decide whether the defendant has shown purposeful discrimination. *Batson,* 106 S.Ct. at 1723.

Butler relies on *Batson* to argue the prosecutor's explanations here did not rebut Butler's prima facie case of discrimination. This argument raises two questions. First, does any non-racial reason satisfy the "neutral explanation" required under *Batson* or must the trial judge determine that the explanations are bona fide and not "sham excuses belatedly contrived to avoid admitting acts of group discrimination"? *People v. Wheeler,* 22 Cal.3d 258, 148 Cal. Rptr. 890, 910, 583 P.2d 748, 768 (1978). Second, what criteria should be used to determine if an explanation is genuine? This question is particularly difficult since peremptory challenges ordinarily may be exercised, "for any reason at all, as long as that reason is related to [the prosecutor's] view concerning the outcome of the case to be tried." *Batson,* 106 S.Ct. at 1719 quoting *United States v. Robinson,* 421 F.Supp. 467, 473 (D.Conn.1976), mandamus granted sub. nom. Indeed, the trial judge here struggled with this question and seemed constrained to accept the explanations at face value.

■ The first question is answered both explicitly and implicitly in *Batson. Batson* states the explanation must be (1) neutral, (2) related to the case to be tried, (3) clear and reasonably specific, and (4) legitimate. Although the explanation need not rise to the level of a challenge for cause, it still must satisfy these requirements. *Batson* also implicitly approves inquiry into the legitimacy of the explanations because otherwise *Batson* would become a right without a remedy. "Rubber stamp" approval of all nonracial explanations, no matter how whimsical or fanciful, would cripple *Batson's* commitment to "ensure that no citizen is disqualified from jury service because of his race." *Batson,* 106 S.Ct. at 1723. Without some form of inquiry, a prosecutor could easily conceal his true reason for removing black jurors by simply inventing "neutral" reasons for the strikes.

*Batson*, 106 S.Ct. at 1728 (Marshall, J., concurring), *see also* Stewart, Court Rules Against Jury Selection Based on Race, 72 A.B.A.J. 68, 70 (1986) ("[A]ny prosecutor's office could develop a list of 10 or 15 standard reasons for striking a juror: the juror was 'inattentive' or dressed poorly and thus 'did not seem to respect the system of justice' "). *Batson* would then merely reinstate, in another form, the "mission impossible" of *Swain. See McCray v. Abrams*, 750 F.2d 1113, 1120–21 (2nd Cir.1984), vacated and remanded, —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986). *Batson* surely cannot be read to produce such an anomalous result.

■ There are a number of factors a trial judge may use to assess the legitimacy of the explanations provided by the prosecutor. All demand of the trial court:

A sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the prosecutor has examined members of the venire and has exercised challenges for cause or preemptorily,

*People v. Hall*, 35 Cal.3d 161, 167–168, 197 Cal.Rptr. 71, 672 P.2d 854 (1983). First, the susceptibility of the particular case to racial discrimination may be evaluated. *United States v. Mathews*, 803 F.2d 325, 332 (7th Cir.1986), *Rodgers v. State*, 725 S.W.2d 477 (Tex.App.1987), *People v. Wheeler*, 148 Cal.Rptr. at 906, 583 P.2d at 764. The court may consider the race of the victims and primary witnesses. For example, the fact that the key witnesses for both sides are black "would discount any advantage that a discriminating prosecutor might perceive in striking blacks from the jury" *Mathews, supra*, at 332. Second, the prosecutor's demeanor may be relevant. *Mathews, supra; Booker v. Jabe*, 775 F.2d 762, 774 (6th Cir.1985). Is the prosecutor "engaging in a process of careful deliberation based on many factors" during voir dire or has he failed to "engage these same jurors in more than desultory voir dire or indeed to ask them any questions at all"? *Mathews, supra*, at

332, *Wheeler, supra,* 148 Cal.Rptr. at 906, 583 P.2d at 764. A past pattern of discriminatory practices by a prosecutor's office may also be probative. *Mathews, supra* at 332. However, a court should not be persuaded by the absence of such a pattern because even one instance of discriminatory conduct is barred under *Batson. Batson*, 106 S.Ct. at 1720–21, *see also United States v. David*, 803 F.2d 1567, 1571 (11th Cir.1986). Finally, the trial court should evaluate the explanation itself. Several objective factors may be used. The trial court should first determine whether similarly situated white jurors were struck on identical or comparable grounds. *State v. Gilmore*, 103 N.J. 508, 511 A.2d 1150, 1168 (1986); *David, supra,* at 1569; *Slappy v. State*, 503 So.2d 350 (Fla.App.1987); *People v. Turner*, 42 Cal.3d 711, 230 Cal.Rptr. 656, 665, 726 P.2d 102, 111 (1986). For example, if the prosecutor struck a black juror because of his occupation but did not remove a similarly employed white juror, then the prosecutor's explanation is highly suspect. In addition, the explanation should not "sweep so broadly as to attenuate its validity" *Gilmore, supra,* 511 A.2d at 1158. If the juror is excluded because of a trait other than race, the trait must apply to the juror specifically and to the facts of the particular case. *Slappy, supra* ("liberalism ascribed to schoolteachers not shown to apply to black schoolteachers peremptorily challenged") *Turner, supra* (lack of intelligence ascribed to truckdrivers not shown to apply to black truckdriver who was removed).

A number of courts have used similar criteria to evaluate a prosecutor's explanations for striking blacks. In *Slappy v. State, supra,* the black defendant claimed the trial court erred when it accepted, at face value, the prosecutor's explanations for peremptorily challenging black jurors. The prosecutor struck two black jurors in *Slappy* because they were teachers which indicated to the prosecutor "a degree of liberalism that I prefer not to have on a jury." *Id.* Another black juror was removed because "she didn't seem secure about sitting on a jury. She asked questions, I think, twice, whether or not she

needs to know anything about the law or criminal justice system. Her health doesn't seem to be very good." *Id.*

The questions and answers in *Slappy* were deemed insufficient to rebut the defendant's prima facie case of discrimination for two reasons. First, the prosecutor did not strike a white schoolteacher and did not show any connection between liberalism, schoolteaching and the particular jurors and facts of the case. Second, the reasons for striking the third juror "were not the subject of any voir dire examination by the prosecution nor were the reasons given for the challenge specific or legitimate." *Id.* The Florida Court of Appeals noted, as is the case here, the trial judge was without guidance as to federal or state law in handling this issue, but the court nonetheless reversed the judgment and remanded for a new trial.

In *United States v. Mathews, supra,* careful inquiry by the trial court persuaded the Eleventh Circuit that the prosecutor's explanations were legitimate. The trial court questioned the prosecutor about his explanations and noted several of the reasons matched the court's own observations during voir dire. Moreover, both sides' key witnesses were black which would negate any discriminatory motive of the prosecutor. Finally, the prosecutor's demeanor and studied deliberation before striking the jurors was persuasive. The Eleventh Circuit was impressed with the trial court's inquiry and affirmed its denial of the mistrial motion. *Id.* at 331–332.

Several courts have prohibited discriminatory use of peremptory challenges on both state constitutional and Sixth Amendment grounds. *People v. Hall, supra; People v. Wheeler, supra; Booker v. Jabe, supra; McCray v. Abrams, supra; State v. Neil,* 457 So.2d 481 (Fla.1984); *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499 (1979). These cases assist the analysis here because the procedures used to examine peremptory challenges are essentially the same as those adopted in *Batson. Batson,* 106 S.Ct. at 1723, n. 23, *Hardy v. State,* 722 S.W.2d 164, 168 (Tex. App.1986). In *People v. Hall,* the black

defendant was convicted after the prosecutor used his peremptory challenges to strike five black jurors. The defendant argued the court erred when it accepted the prosecutor's explanations "without any inquiry or examination" despite its duty to "satisfy itself that the explanation is genuine." 197 Cal.Rptr. at 75, 672 P.2d at 858. The California Supreme Court agreed. The trial court must examine the explanations, especially where the evidence suggests the reasons were pretextual. *Id.* For example, in *Hall,* one black juror was removed because her son was the same age as the defendant. Yet three non-black female jurors were not struck even though they also had children who were the defendant's age. The court concluded the prosecutor did not rebut the inference of discrimination and thus reversed the conviction. *Id.* 197 Cal. Rptr. at 75, 77, 672 P.2d at 858, 860.

This court next turns to the explanations provided in this case. The six black jurors peremptorily challenged were Louise Jackson, Bertha Townsend, Margaret Williams, Wilbert Neal, Ethel Johnson and Rita Burris. The prosecutor struck Jackson because she was elderly and seemed intimidated. The prosecutor had a prior trial experience where an elderly juror's intimidation prevented the jury from reaching a verdict.

Bertha Townsend and Margaret Williams were removed because when the prosecutor asked the jurors if there was any reason why they could not be fair and impartial jurors; "I looked up in time to see both jurors looking at each other and laughing ... We have all had the occasion—well in court but perhaps more on an every day basis—to see people and see them looking your way and laughing while you're talking. I felt very uncomfortable." Margaret Williams was struck for a second reason. The prosecutor stated:

> The whole time I did my voir dire, she did not look up at me and look at me to see the questions I was asking and make eye contact with me. She looked at the floor the whole time which indicated to me that she had absolutely zero interest in serving on a jury ...

Wilbert Neal was removed because during voir dire he said he had a prior negative experience with the police and seemed "firmly prejudiced against the police in his own situation, [and] did not convince me that he could be a fair and impartial juror." Ethel Johnson, the fifth black juror, was struck because she worked as a nurse and it was the prosecutor's experience that nurses, because of their compassionate nature, might feel sorry for the defendant.

Finally, Rita Burris was removed because she was 15 to 20 minutes late the second morning of trial. The prosecutor said this indicated Burris would not take her duty as a juror seriously and consequently the prosecutor was "afraid to trust her with the course of the case that was so very serious in nature."

After the prosecutor finished her explanations, the trial judge attempted to reconcile the "neutral explanation" required under *Batson* with the explanations given. The court stated *Batson* "doesn't really give you a good idea of what is a good reason, of what is an adequate reason." The court noted that peremptory challenges ordinarily don't require any reason: "You can do it because you like old people better than young people ... or maybe you don't trust people with beards or even mustaches." The court then held *Batson* was to be applied prospectively only and alternatively the prosecution met its burden under *Batson* because:

> The prosecutor has stated neutral reasons, although they do not rise to the level of establishing a challenge for cause. Now that ruling is, of course, pure guess, as I've indicated, I don't know what the standard is.

The trial court's uncertainty about Batson's "neutral explanation" requirement is understandable given that *Batson* was decided four days after the jury's verdict against Butler. Ordinarily it is the trial court's duty to assess the prosecutor's explanations, and an appellate court may not reverse unless the trial court's findings are clearly erroneous. *Batson*, 106 S.Ct. at 1724 n. 21. *Mathews, supra,* at 330. However, the trial court here was uncertain about the standard, did not analyze the explanations at all and seemed constrained to accept them at face value. Consequently, this court will now evaluate the proffered reasons.

Louise Jackson was struck because she was elderly and an elderly juror in another case caused problems for the prosecutor because she was intimidated. The prosecutor believed Jackson would be intimidated. The only exchange at voir-dire between Jackson and the prosecutor was as follows:

> Prosecutor: And Mrs. Jackson, it indicates that your husband is retired. Where is he retired from, ma'am?
>
> Jackson: The Water Department
>
> Prosecutor: The Kansas City Water Department?
>
> Jackson: Yes
>
> Prosecutor: How long was he with the Water Department?
>
> Jackson: Oh, fifteen years, I think

Jackson's answers were not vague or unresponsive. In addition, *Batson* requires the explanation be related to the case to be tried. The prosecutor's prior experience with an elderly juror is not probative of Jackson's ability to sit as a juror in this case. Indeed, the link between age and a predisposition to intimidation is highly questionable. Most damning, however, is the prosecutor's failure to strike an elderly white man from the jury. If the prosecutor was striking jurors because of age, then the white juror also should have been removed. Yet the prosecutor asked no questions of the white juror and permitted him to remain on the panel.

The prosecutor's reasons for striking Margaret Williams and Bertha Townsend are also suspect under *Batson*. The explanations were conflicting. The prosecutor noticed Williams and Townsend laughing while looking at each other and at the prosecutor. This made the prosecutor uncomfortable. However, Williams was also struck because she looked at the floor throughout voir-dire and did not make eye contact with the prosecutor. The prosecutor cannot have it both ways. Williams

was either looking at the prosecutor and Townsend or looking at the floor the entire time. She could not have done both. Moreover, no questions were directed to either Williams or Townsend during voir dire and the prosecutor did not make even a minimal attempt to ferret out any possible disrespect for the judicial system. Finally, the premise that a juror who looks at the floor is unfit is questionable.

 Ethel Johnson was removed because she was a nurse and it was the prosecutor's experience that nurses were compassionate and thus inclined to feel sorry for defendants. Again, the prosecutor's prior experience is not a reason "related to the case to be tried." *Batson*, 106 S.Ct. at 1723. Also significant is the prosecutor's failure to remove a white juror who worked for the American Nurses Association. The prosecutor explained the white juror worked in research and was not "actively engaged in patient care." Yet the prosecutor has not explained why a position in research "cured" the white juror of compassion. In fact, the prosecutor did not even question the white juror during voir dire.

Rita Burris was struck because she arrived 15 to 20–minutes late the second morning of trial. The prosecutor believed the tardiness indicated Burris would not take her duties as a juror seriously. While the prosecutor's concern is understandable, it is also relevant that Burris worked for the Marines and might be a good juror for the prosecution. This court also notes that Burris was asked no questions during voir dire. Finally, the prosecutor struck Neal because he had a prior "negative contact" with the police and seemed to still be prejudiced against the police.

Several of the prosecutor's explanations here are suspect. White jurors who were similarly situated were not removed. Two of the explanations were not related to the case to be tried and some were based on questionable premises. The prosecutor did not question three of the excluded jurors at all and engaged in very minimal questioning of the others. Based on these facts this court finds the state did not present a neutral explanation to rebut Butler's prima facie case of discrimination. A sufficient record having been made, there is no reason under *State v. Antwine, supra,* to send this matter back for a further hearing. The cause is reversed and remanded for a new trial.

All concur.