STATE of Missouri, Respondent,

v.

Jerry TOLLIVER, Appellant.

No. 15295.

Missouri Court of Appeals,
Southern District,
Division Two.

April 21, 1988.

Motion for Rehearing or to Transfer
Denied May 12, 1988.

Application to Transfer Denied
June 14, 1988.

Susan L. Hogan, Columbia, for appellant.

William L. Webster, Atty. Gen., Scott L. Templeton, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

A jury found defendant Jerry Tolliver guilty of selling marijuana, and he was sentenced to five years' imprisonment. Defendant appeals.

Defendant does not challenge the sufficiency of the evidence to support the verdict. The state's evidence showed that on December 29, 1985, defendant sold a quarter-ounce of marijuana to a Sikeston policeman working undercover.

Defendant asserts that he was denied his constitutional rights to a fair trial by an impartial jury and to equal protection of the laws in that the state used four of its six peremptory challenges to strike all but one black person from the jury, the state failed to establish valid racially neutral reasons for those four strikes, and the record reflects that the state did not strike white veniremen who were similarly situated to the four black persons who were struck.

The state used its six peremptory challenges to strike Lillie Mae Johnson, Ivett Patton, Juanita Walton, and Gussie Mead, each of whom is black, and Peacock and Hayes, who are not black. Thomas Minnis sat on the jury and was its only black member. Defendant is black.

The state's three witnesses were Bryan Crites, the drug purchaser, Thurman Burns, custodian of the marijuana, and C.R. Longwell, laboratory technician who identified the sold substance as marijuana. The sale was made in the presence of Pam Smith. Defendant obtained the marijuana

at an apartment occupied by Dan Bussell, and inferably Bussell was defendant's source for the drug. The record does not show the race of any of those persons, nor of Dan Bussell who, like Pam Smith, did not testify. The only defense witness was defendant himself, who denied that he was present at or participated in the sale.

The trial was held on January 8, 1987. Initially 37 persons were summoned as veniremen for defendant's trial, but only 33 appeared and were sworn. The prosecutor conducted voir dire for the state. The trial judge interrogated the veniremen. Defense counsel Gausnell then conducted voir dire for the defendant.

Under questioning by defense counsel, Lillie Mae Johnson stated that she had sat on a jury before, "a civil case about four years ago at Bloomfield," and that the jury had returned a verdict. Thomas Minnis testified that he had sat on a jury in a civil case, "an insurance case," in 1977 or 1978, and the jury returned a verdict. He stated he would have no problem returning a verdict in the instant case.

A recess was taken and the veniremen were excused.

After several veniremen were excused for cause or other reasons, each side was afforded six peremptory challenges to be directed to the first 24 veniremen remaining on the list. That 24 consisted of the five black persons and nineteen persons who were not black. Defendant makes no challenge to the propriety of the procedure to that point.

On inquiry by defense counsel, the trial court informed counsel that he would require the prosecutor to state the reason for making a peremptory challenge against a black venireman. Each side then made six peremptory challenges. Defense counsel then requested that the prosecutor state "why he struck all blacks except Thomas Minnis." Asked by the court to express the basis for the strikes, the prosecutor made the following statement:

"(PROSECUTOR): Well, we've got— four of the six are black. Two non-black persons were stricken by the State. The four that the State struck which are black, are Lillie Mae Johnson, Ivett Patton, Juanita Walton and Gussie Mead; all four of those individuals are, or at least appear to be elderly, I've not seen their lists of information which relates to their particular age. There were some decisions to be made in making these strikes because there are also elderly non-black persons in the group.

"The basis primarily for Lillie Mae Johnson is age, number one, number two, she had been involved in some civil litigation as a juror before in Bloomfield, which is another judicial circuit, which causes me to think that she is a mobile-type person, maybe does not reside in one area for a long length of time, Mr. Gausnell developed that in voir dire and did not ask whether or not that jury panel reached a verdict, so, I don't know whether or not they reached a decision or for whom they, they selected.

"Ivett Patton was stricken for two reasons, primarily age, as I indicated, secondly, she appeared to be inattentive during voir dire as I observed her, she did not respond in any way to any question that was asked by either the Court, Mr. Gausnell or myself. I would notice at times that she appeared to be preoccupied, not particularly concentrating so much on the proceedings in the courtroom, as just sort of daydreaming. I had fear that because of maybe her age she would not possibly attend to the business of the court this morning.

"With regard to Juanita Walton, she spoke nothing, I believe, with regard to any questions asked on voir dire; she is again, an elderly person. Basically I was looking for elderly people to eliminate except for the fact that I had two individuals who were younger, who happened to both be white, that based on their mannerisms and physical appearance I felt as though the State did not want them to serve, that being Mr. Hayes and Mr. Fielder.

"Now, Mr. Mead also is an elderly person, his, he, he mentioned nothing, said nothing during the court proceedings in the voir dire, and based on his

age I was concerned about his attentiveness and ability to maintain his concentration throughout the proceedings."

The record shows the following ages of the black veniremen stricken by the state: Lillie Mae Johnson, 61; Ivett Patton, 61; Juanita Walton, 59; Gussie Mead, 62. The state also struck venireman Hayes, 28, and venireman Fielder, 26. The veniremen who actually served as jurors included Thomas Minnis, 70, who is black, and Dunn, 67, and Gooch, 65, who are non-black. Of the other fifteen veniremen, five were in their 50's, four were in their 40's, five were in their 30's, and one was 28.

Defense counsel then made certain statements in which he questioned the accuracy of some of the statements made by the prosecutor. Defense counsel did not make any motion requesting specific relief. The following then occurred:

"(THE COURT): Well, the Court is not in a position, in these kinds of cases, to read the mind of the prosecuting attorney to determine what his motivations for striking jurors really are. The only thing the Court can do is look at the overall panel, note that some blacks have been or will serve; some blacks have been taken off the panel; and I do not find enough evidence, based on the circumstances of the manner of striking, to find as a matter of fact that the sole motivation of the prosecutor's strikes was to strike for reason of race.

"Therefore, any objection to the strikes, peremptory strikes taken by the State, is overruled."

At the conclusion of the recess, the veniremen were recalled, 12 jurors were sworn, and the trial resumed.

The state denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1716, 90 L.Ed.2d 69 (1986). Although racial discrimination in jury selection offends the Equal Protection Clause of the Fourteenth Amendment, the defendant has no right to a petit jury composed in whole or in part of persons of his own race. *Id.,*

106 S.Ct. at 1716. A defendant does have the right, however, to be tried by a jury whose members are selected pursuant to non-discriminatory criteria. *Id.* at 1717. A person's race simply is unrelated to his fitness as a juror and it is unconstitutional for the state to deny a person participation in jury service on account of his race. *Id.* at 1718. The constitution prohibits all forms of purposeful racial discrimination in the selection of the venire and in the selection of the petit jury. *Id.* at 1718.

The Equal Protection Clause forbids the prosecutor, in the exercise of peremptory challenges, to challenge veniremen solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the state's case against a black defendant. *Id.* at 1719. Although the constitution does not confer the right to peremptory challenges, they are one means of assuring the selection of a qualified and unbiased jury. *Id.* at 1720.

A defendant who alleges that he has been the victim of intentional discrimination has the ultimate burden of persuasion. *Id.* at 1721. A defendant may establish a prima facie case of purposeful discrimination in the selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. "To establish such a case, the defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida,* [430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, 'that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate.' *Avery v. Georgia,* [345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination."[1] *Id.* at 1722–1723.

In deciding whether the defendant has met the requisite showing, the trial court should consider all relevant circumstances. Illustrative examples include whether there exists a pattern of strikes against black jurors in the particular venire, and questions asked or statements made by the prosecutor during voir dire. Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. The explanation need not rise to the level justifying challenges for cause, but the prosecutor may not rebut the defendant's prima facie case by stating merely that he challenged jurors of the defendant's race on the assumption or his intuitive judgment that they would be partial to the defendant because of their shared race. The state may not strike black veniremen on the assumption that they will be biased simply because the defendant is black. *Id.* at 1723.

The prosecutor may not rebut the defendant's case merely by denying that he had a discriminatory motive. The prosecutor must articulate a neutral explanation related to the particular case on trial and the trial court then will have the duty to determine if the defendant has established purposeful discrimination. *Id.* at 1723. The prosecutor must give a clear and reasonably specific explanation of his legitimate reasons for exercising the peremptory challenge. *Id.* at 1724.

A finding on the issue of intentional discrimination is a finding of fact largely turning on evaluation of credibility and a reviewing court ordinarily should give great deference to the trial court's finding on that issue. *Id.* at 1724.

The Supreme Court of Missouri in *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), discussed extensively the principles enunciated in *Batson,* supra, and expanded on those principles. It directed trial judges "to consider the prosecutor's explanations as part of the process of determining whether a defendant has established a prima facie case of racially discriminatory use of peremptory challenges." *Antwine,* supra, at 64.

The trial judge has "a particularly troubling task" in judging the validity of the prosecutor's "neutral explanation." Peremptory challenges require subjective evaluations of veniremen by the prosecutor, and he must rely upon presumptions of attitudes "based upon demeanor, gender, ethnic background, employment, marital status, age, economic status, social position, religion, and many other fundamental background facts." *Id.* at 64. The trial court must determine from the totality of circumstances whether an articulated neutral explanation is but an excuse for improper discrimination. Thus *Batson* requires the trial judge "to embrace a participatory role in voir dire, noting the subtle nuance of both verbal and non-verbal communication from each member of the venire and from the prosecutor himself." *Id.* at 64.

Factors to be evaluated include the susceptibility of the particular case to racial discrimination, the prosecutor's demeanor, whether similarly situated non-black veniremen have not been challenged, the type of offense being tried, the nature of the anticipated evidence, the potential punishment which a guilty verdict may produce

---

1. The second element has been interpreted to mean "defendant can rely on the fact that peremptory challenges may disguise racial discrimination." *United States v. Forbes,* 816 F.2d 1006, 1010 (5th Cir.1987). The element, accordingly, is self-proving.

Our Supreme Court has said: "As a practical matter, the third element of the prima facie case under *Batson* ... requires the trial court to consider the State's explanation of the manner in which it employed its challenges prior to making a final determination as to whether a prima facie case exists. We must therefore direct our trial judges to consider the prosecutor's explanations as part of the process of determining whether a defendant has established a prima facie case of racially discriminatory use of peremptory challenges." *State v. Antwine,* 743 S.W.2d 51, 64 (Mo. banc 1987).

and, of course, the prosecutor's explanation itself. *Id.* at 65.

The court, in *Antwine,* supra, at 65, said:
"[W]e believe that *Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's legitimate 'hunches' and past experience, so long as racial discrimination is not the motive.... [W]e read *Batson* to require the trial judge to assess the entire milieu of the voir dire objectively and subjectively. The judge must consider his personal, lifetime experiences with voir dire, comparing his observations and assessments of veniremen with those explained by the State. In addition, he must consider both his personal experiences with the prosecutor and any evidence offered by a defendant to show a pattern or practice of a prosecutor using peremptory challenges in a racially discriminatory manner over the course of time. Other factors must be considered as circumstances demand.

Ultimately, however, the trial judge must focus all of the information and intuitive perceptions he has gathered to determine whether the prosecutor's use of his peremptory challenges proceeds from a racially discriminatory motive."

In the wake of *Batson,* federal prosecutors have given a variety of "race-neutral" explanations for striking black veniremen. Among the explanations held not to be insufficient, against the background of the case on trial, were the following: (1) the venireman expressed an inability to appraise a certain type of evidence which the government intended to adduce. *United States v. Mathews,* 803 F.2d 325 (7th Cir. 1986); (2) venireman was inattentive and late for trial. *United States v. Mathews, supra;* (3) venireman gave prosecutor hostile looks. *United States v. Mathews, supra;* (4) venireman fell asleep during voir dire and had prior problems with IRS. *United States v. Ratcliff,* 806 F.2d 1253 (5th Cir.1986); (5) venireman knew defense counsel. *United States v. Cartlidge,* 808 F.2d 1064 (5th Cir.1987); (6) venireman, like defendant, was young, single, and unemployed. *United States v. Cartlidge, supra;* (7) venireman avoided eye contact with prosecutor. *United States v. Cart-*

*lidge, supra;* (8) venireman was relative of a felon. *United States v. Cartlidge, supra;* (9) venireman lived in city where newspaper criticized prosecution of case and may have been a constituent of defendant-legislator. *United States v. Woods,* 812 F.2d 1483 (4th Cir.1987); (10) venireman possibly acquainted with alibi witness. *United States v. Love,* 815 F.2d 53 (8th Cir.1987); *United States v. Cloyd,* 819 F.2d 836 (8th Cir.1987); (11) venireman had two sons in trouble with the law. *United States v. Forbes,* 816 F.2d 1006 (5th Cir. 1987); (12) venireman hostile to jury service. *United States v. Forbes, supra;* (13) venireman reputed to use drugs—drug case. *United States v. Williams,* 822 F.2d 512 (5th Cir.1987); (14) venireman regarded by law enforcement officials as a poor juror in a drug case—officials did not know defendant was black when opinion given. *United States v. Williams, supra.*

In some cases the federal courts have found that the defendant failed to make a prima facie case of discrimination, and thus there was no reason to inquire into prosecutor's reasons for his peremptory challenges. *United States v. Dennis,* 804 F.2d 1208 (11th Cir.1986); *United States v. Montgomery,* 819 F.2d 847 (8th Cir.1987).

In *United States v. Davis,* 809 F.2d 1194 (6th Cir.1987), the Sixth Circuit was presented with a novel situation and accorded appellate treatment which was equally novel. The prosecutor presented the reasons for his peremptory challenges of black veniremen to the trial court in camera. Defense counsel were not informed of the reasons and had no access to the sealed transcript of the in camera hearing. The court of appeals reviewed that transcript and found no evidence of racial discrimination in the exercise of the challenges. Apparently to this day the defendant and his counsel remain unaware of the prosecutor's explanations.

In *United States v. Brown,* 817 F.2d 674 (10th Cir.1987), defendant and his attorney were black. The prosecutor challenged two black veniremen on the basis that they either knew the defense attorney or knew who he was. Holding that the explanation was insufficient to satisfy *Batson,* the court said, at 676:

"If the voir dire had disclosed an affinity between a potential juror and defense counsel, even if that affinity is linked to race, it is logical to presume defense counsel would have an advantage with that juror. But such a linkage cannot be assumed just because of racial identity. That is what occurred in this case."

In *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), the following explanations offered by the prosecutor for peremptorily challenging black venireman survived appellate scrutiny: one venireman had a close relative in the penitentiary, a second venireman was a victim of a sex crime and was disillusioned with the criminal justice system, and a third venireman was inattentive during voir dire. On the other hand, in *State v. Blackmon*, 744 S.W.2d 482 (Mo. App.1988), this court held that the defendant made a prima facie case of discrimination and that the prosecutor's explanation —that the venireman was a member of the black community—was insufficient and required vacation of the conviction.

In *State v. Smith*, 744 S.W.2d 476 (Mo. App.1987), after the state had made its peremptory challenges, defense counsel informed the court that he wanted to make a record under *Batson*. The prosecutor gave his explanations for his peremptory challenges . of certain veniremen who were black. Defense counsel questioned those explanations but made no objection to the composition of the jury after the state gave its explanation and made no motion requesting any relief. The court of appeals held that the failure of defense counsel to obtain a ruling on his objection to the jury composition constituted an abandonment of the objection and that nothing was preserved for appellate review.

■ The fact that the prosecutor did not peremptorily challenge Thomas Minnis, a black who later served on the jury, is not per se sufficient to undercut an inference of discrimination, *State v. Johnson*, 744 S.W.2d 879, 880[2] (Mo.App.1988), and he was required to explain the reasons for his peremptory challenges prior to the trial court's making a "final" determination as to whether a prima facie case existed. *Antwine*, supra, at 64[14].

■ The instant case was tried after *Batson* and before *Antwine*. Although it is true that defense counsel made no motion requesting specific relief, after the prosecutor had stated his explanations for the peremptory challenges, the statement of the trial court indicates that such a motion would have been futile. This court has determined to review defendant's first point on the basis of plain error, Rule 30.-20, Missouri Rules of Court. For the reasons which follow, this court finds that the defendant made a prima facie case of racially discriminatory use of peremptory challenges and that the prosecutor did not rebut that prima facie showing by coming forward with a satisfactory explanation for challenging veniremen Juanita Walton and Gussie Mead.

Did defendant, under the *Batson* guidelines, establish a prima facie case of purposeful discrimination in the selection of the jury? The first element is satisfied because defendant, being black, is a member of a cognizable racial group and the prosecutor used peremptory challenges to remove from the venire four black persons. The second element is self-proving—defendant may rely on the fact that peremptory challenges may disguise racial discrimination. Third, of the six peremptory challenges available to the prosecutor, he utilized four to challenge four of the five blacks on the venire, and used only two peremptory challenges to strike non-blacks, although there were nineteen on the venire. Although all four of the peremptory challenges against blacks were exercised for reasons of age, according to the prosecutor, he assigned additional reasons for striking Lillie Mae Johnson and Ivett Patton. The prosecutor felt that Johnson was "a mobile type person" and that Patton was preoccupied, "just sort. of daydreaming."

Juanita Walton and Gussie Mead were the other two blacks whom the prosecutor peremptorily challenged. Although the prosecutor said that neither of them said anything on voir dire, the same was true of 16 other veniremen on the final list of 24. Although age was given as the factor for striking Walton and Mead, both were

younger than Gooch, 65, Dunn, 67, and Minnis, 70, who served on the jury.

In *Antwine*, supra, the Supreme Court of Missouri said, at 65:

"We do not believe, however, that *Batson* is satisfied by 'neutral explanations' which are no more than facially legitimate, reasonably specific and clear. Were facially neutral explanations sufficient without more, *Batson* would be meaningless. It would take little effort for prosecutors who are of such a mind to adopt rote 'neutral explanations' which bear facial legitimacy but conceal a discriminatory motive. We do not believe the Supreme Court intended a charade when it announced *Batson.*"

This court holds that the defendant made a prima facie showing of racial discrimination and that the state did not come forward with sufficient neutral explanations for peremptorily challenging Juanita Walton and Gussie Mead. The judgment is reversed and the cause remanded.

PREWITT, P.J., and MAUS, J., concur.

HOGAN, J., not participating.