**STATE of Missouri, Plaintiff-Respondent,**

v.

**Jerry TAYLOR, Defendant-Appellant.**

**No. 51235.**

Missouri Court of Appeals, Eastern District, Division Three.

March 10, 1987.

Holly Simons, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

JAMES A. PUDLOWSKI, Presiding Judge.

This is an appeal by Jerry Taylor from his conviction for first degree murder, § 565.020 RSMo 1986. The conviction was entered pursuant to a jury verdict and appellant was sentenced to life imprisonment without the possibility of parole.

As his first point on appeal, appellant alleges that the trial court erred in overruling his motion to preclude the prosecutor's use of peremptory challenges against black venirepersons and in failing to quash the venire panel after the state struck all the black panel members. We are constrained by the United States Supreme Court's recent holding in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) and by the subsequent order of our Supreme Court handed down on February 17, 1987, *State v. Antwine*, No. 67720[1] to remand the cause for an evidentiary hearing to determine whether the United States Supreme Court's holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) requires reversal and retrial.

1. See Appendix A.

■ Appellant has failed to cite this court to any authority to support his allegation that the trial court erred in overruling his motion to preclude the use of peremptory challenges against black venirepersons. Racial prejudice has long been held to be an improper reason for removing a member of the venire panel. The case law is clear on that point. *See Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). However, so long as race was not the motivating factor, the prosecutor had the right to use his allotted number of peremptory challenges against anyone on the panel. The trial court in the case *sub judice* properly found that it did not have the power to limit the prosecutor's peremptory challenges to white venirepersons only and it so ruled. With regard to that ruling, we find no error. Appellant contends, however, that the strikes against blacks were racially motivated and that the prosecutor's actions deprived him of his right, under the sixth and fourteenth amendments to the United States Constitution, to have a jury selected from a fair cross-section of the community.

In 1965, in *Swain v. Alabama, supra,* the United States Supreme Court stated that to succeed on such a claim, a defendant had to show systematic exclusion of members of his racial group over a period of months or years. Using that standard, appellant admits that his claim must fail because he has not made the required showing. However, on April 30, 1986, after the trial of this cause, the U.S. Supreme Court handed down *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), overruling *Swain.* *not right*

In *Batson,* the court held that a defendant makes a prima facie showing that peremptory strikes were used in a discriminatory fashion in violation of his fourteenth amendment rights if he demonstrates that the state, in making its peremptory challenges, struck *all* of the black members of the panel. Once that showing has been made, the burden shifts to the state to come forward with a neutral explanation for its strikes. If no such neutral explanation is given, the panel must be struck. Of course that was not the law in January of

1986 when appellant was tried. Recently, however, in *Griffith v. Kentucky, supra,* the *Batson* ruling was held to apply to any case, like this one, which was pending on direct review when *Batson* was handed down.

■ Appellant was tried by an all white jury. After the strikes for cause had been made, there were seven blacks left on the panel. The prosecutor, had nine peremptory challenges. He used seven of them to strike all seven of the black venirepersons. We have carefully examined both the questions asked and the answers given on voir dire and there is no indication of a completely neutral explanation for the striking of all seven of the black panelists. One of the seven was never even asked a question on voir dire, nor did she respond affirmatively to any question asked of the panel as a whole. A second panelist stated only that she had two adult children, an answer similar to that given by several white panelists who were not struck. There was no neutral explanation offered for the striking of all seven of the black venirepersons and none appears from the record.

When appellant's counsel moved to have the panel quashed, the prosecutor stated that in striking the seven, it was "not primary *or probably even secondary* in my [his] consideration that they were black." (Emphasis added). However, he offered no explanation for the strikes. On the record before us, a prima facie showing was made that appellant's fourteenth amendment rights were violated and that showing was not refuted by the prosecutor and is not refuted by the record.

Where the record indicates that a defendant made a specific objection and made or attempted to make the record necessary to support a *Batson* challenge, our Supreme Court's order in *State v. Antwine, supra,* handed down on February 17, 1987, indicates that the proper course of action is to remand for a hearing to determine whether a reversal and retrial is required under *Batson* and *Griffith.*

We therefore remand this cause to the trial court for the sole purpose of determin-

ing the validity of appellant's constitutional claim in light of the *Batson* holding. After the hearing, the trial court is to make findings of fact and conclusions of law on the issues of whether appellant has established a prima facie case of purposeful discrimination and whether the state has rebutted this showing by presenting a neutral explanation for using its peremptory strikes to eliminate all the black members of the venire panel. The trial court is ordered to certify these findings of fact and conclusions of law directly to this court, which will then take appropriate action consistent with the requirements of *Batson*. We will address appellant's other two points, if necessary, at that time.

The cause is remanded for purposes of a hearing.

CRANDALL and KAROHL, JJ., concur.

### APPENDIX A

STATE OF MISSOURI, Respondent,

v.

CALVERT LEON ANTWINE, Appellant.

No. 67720

Supreme Court of Missouri, En Banc.

February 17, 1987.

### ORDER

This case was tried on August 22, 1985. Appellant was sentenced on December 13, 1985. Among his contentions on appeal, appellant argues that the trial court erred in failing to quash the petit jury impanelled because the State engaged in a systematic pattern of excluding qualified Black veniremen from the jury in violation of appellant's Fourteenth and Sixth Amendment rights to equal protection and to a jury selected from a fair cross-section of the community.

While this case was pending on direct appeal to this Court, the United States Supreme Court decided *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), overruling *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the law governing the jury composition issue at the time of trial. In our original opinion of January 13, 1987, we denied appellant's *Batson* argument on the basis of *State v. Lockett* (Mo. banc 1986) (No. 68186, decided December 16, 1986), in which we held that *Batson* should not be given retroactive application. On January 13, 1987, the United States Supreme Court decided that *Batson* had retroactive effect to "all cases, state or federal, pending on direct review or not yet final." *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). *Griffith*, of course, overturns our decision in *Lockett*.

We are bound by *Batson* and *Griffith*. Unfortunately, the Supreme Court provided precious little direction in its decisions as to the standard to be applied in determining whether a *Batson* issue has been preserved for appellate review. This question is not one of mere academic interest; *Batson* and *Griffith* changed the rules under which the criminal jury trials are conducted. Pre-*Batson* trials relied on pre-*Batson* law, addressing questions of Black membership on juries on the basis of *Swain*, 380 U.S. 202, 85 S.Ct. 824. None of the participants in such trials could know what record would be necessary to preserve or refute a *Batson* claim. But this much is apparent from *Batson* and *Griffith*: the defendant in each case attempted to make a record showing a discriminatory use of peremptory challenges by the prosecution.

It therefore falls to this Court to determine whether *Batson* issues raised on direct appeal have been preserved for our review. Given the difficulties inherent in considering *Batson* issues on pre-*Batson* trial records, we can imagine at least three classes of cases which will confront us on appellate review. First, there are those cases in which no reference is made in the trial court to alleged discriminatory utilization of peremptory challenges at the time of jury selection. Where no objection to either the peremptory challenges or the venire chosen is made, the issue cannot be raised for the first time on direct appeal.

We hold that the defendant has acquiesced to the jury selected; the constitutional challenge is waived.

A second scenario arises where a prefunctory or non-specific objection is made to the state's use of peremptory challenges. However, the record on appeal is void of any indication of the race of the defendant, the number of Black persons struck by the prosecutor, and the racial composition of the jury selected or an attempt by the defendant—not allowed by the trial judge—to make such a record. Under these circumstances, the defendant has failed to preserve the *Batson* issue for appellate review.

The third situation is that found in *Batson* and *Griffith,* where the record indicates that a defendant made a specific objection and made or attempted to make a record which establishes the necessary facts to support a *Batson* challenge to the petit jury. In such cases, we are required to remand for further hearing to determine whether *Batson* requires reversal and retrial.

In this case, after the jury was impaneled, the following colloquy took place at the bench:

MR. TORRENCE: For purposes of making a record, Your Honor, at this time, the defendant will move to strike the jury panel before they're sworn in, because of the illegal use by the State of their peremptory challenges, in that one, two, three, four of their strikes on the panel and one of their alternative strikes were used to strike black Americans from the panel, which, it is the defendant's position, is in violation of the defendant's 6th and 14th Amendment rights to a fair and impartial jury in this case.

The reason I—the fair cross-section requirement of the 6th Amendment right to fair trial. Now, the reason that I want to do this now is simply to—if the State will not agree that those four panel members, black Americans, I would propose to call them up here and ask them what their race is.

THE COURT: What was that again? That last?

MR. TORRENCE: I was explaining to the Court that the reason I wanted to do it now, before we dismiss these people, is if the State will not agree that those folks are black Americans, I would propose to call them as a witness to ask them what their race is.

THE COURT: Any response?

MR. DAKOPOLOS: The State strenuously objects to any such action by the Court. Peremptory strikes in the State of Missouri are just what the word implies, and the State need not explain the reason for any strikes. The State will not agree that the four persons named are black nor will the State agree as to the black-white composition of this jury panel.

THE COURT: And your motion is to strike the panel?

MR. TORRENCE: Yes, sir.

THE COURT: That motion is overruled.

MR. TORRENCE: If the Court would care to, I would request that the court take judicial notice, then, that jurors—or panel members No. 3, 5, 28 and 38 are black Americans. If the Court does not wish to do that, I would propose to call those four persons up and ask them what their race is.

THE COURT: That request is denied.

MR. DAKOPOLOS: Thank you, Your Honor.

In *Batson,* the defendant made a timely objection to the prosecutor's removal of all Black persons on the venire. The Supreme Court held that:

Because the trial court flatly rejected the objection without requiring the prosecutor to give an explanation for his action, we remand this case for further proceedings. If the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed.

*Batson v. Kentucky,* 106 S.Ct. at 1725.

Here, as in *Batson,* the trial court "flatly rejected" the appellant's objection to the

composition of the petit jury and refused appellant an opportunity to make a record to support the objection. Under the mandate of *Batson* and *Griffith*, we are required to remand this case to the trial court for further proceedings.

On remand, the trial court is ordered to conduct an evidentiary hearing for the purpose of determining the validity of appellant's constitutional claim under *Batson.* After the hearing, the trial court is to render findings of fact and conclusions of law as to whether appellant has established a prima facie case of purposeful discrimination and whether the State has presented a neutral explanation for using its peremptory challenges to strike Black veniremen. The trial court is to certify to this Court its findings of fact and conclusions of law. Upon receipt of the trial court's certified findings and conclusions, this Court will take appropriate action consistent with the requirements of Batson.

s/ <u>Andrew Jackson Higgins</u>
ANDREW JACKSON HIGGINS
Chief Justice

All concur.

