**STATE of Missouri, Respondent,**

v.

**Craig JONES, Appellant.**

**No. 51839.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 19, 1988.*

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 1988.

Application to Transfer Denied
April 19, 1988.

---

* This case was originally handed down on June 16, 1987, and then our supreme court granted transfer. The supreme court retransferred the case for our reexamination in light of *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987).

David C. Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Defendant appeals from his conviction by a jury of capital murder, RSMo § 565.001 (Supp.1982). Defendant received a sentence of life imprisonment without eligibility for parole for fifty years. On appeal, defendant argues that the trial court erred in: (1) denying defendant's motion to quash the jury panel based on the prosecuting attorney's alleged racially discriminatory use of peremptory challenges; (2) permitting the prosecuting attorney to use prior inconsistent statements as substantive evidence; (3) permitting the prosecuting attorney to comment on appellant's failure to

testify; (4) denying defendant's motion to suppress his allegedly involuntary statement to police; and (5) denying defendant's request for a second psychiatric examination three days before trial. We find no error in the trial court proceedings. Affirmed.

The evidence adduced at trial showed that defendant's mother, Verna Jones, provided home health care for Virginia O'Brien, an elderly woman. Verna Jones fraudulently used Mrs. O'Brien's credit cards and forged a number of her checks. Mrs. O'Brien discovered Verna Jones' illegal activities and confronted her with the information. The police found Mrs. O'Brien murdered on September 2, 1984. According to defendant's statement to the police, he, his mother, and a friend, Gary Jackson, went to Mrs. O'Brien's apartment on August 31, 1984, at the request of Verna Jones. Defendant said that he was burglarizing the front of the apartment, as instructed by his mother, while his mother and Jackson were in the rear of the apartment. Defendant claimed that he did not know of the intent to kill Mrs. O'Brien. He stated that he did not know of Mrs. O'Brien's murder until he heard it reported on the Sunday, September 2, 1984 news. Defendant asserted that he only participated in the burglary as a cover-up and that Jackson actually killed Mrs. O'Brien.

Defendant's mother testified on behalf of her son. She stated that defendant knew nothing about the forgeries, fraud, or the murder. She further claimed that her boyfriend, Larry Shaw, murdered Mrs. O'Brien hours before defendant returned with her to commit the burglary. On cross-examination, she admitted to having previously given a statement to the police that she, defendant, and Gary Jackson had committed the burglary and the murder.

In his first point on appeal, defendant contends that the trial court erred in denying his motion to quash the jury panel. Defendant alleges that the prosecutor systematically used his peremptory challenges against members of defendant's race motivated solely by racial discrimination. Such use of peremptory challenges has been held

unconstitutional. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1719, 90 L.Ed. 2d 69 (1986); *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987). In *Batson,* the Supreme Court set forth a three part test to determine whether a prosecutor's use of peremptory challenges creates a prima facie case of purposeful discrimination. First, the defendant and the excluded jurors must be members of the same cognizable racial group. Second, defendant may rely on the fact that the peremptory challenge constitutes a jury selection practice that permits discrimination. And third, these facts and other relevant circumstances must raise an inference of racial discrimination by the prosecutor. *Batson,* 106 S.Ct. at 1723. Once a defendant has made the initial requisite showing of purposeful discrimination, the prosecutor then has the burden of putting forth race neutral explanations for the strikes used against members of defendant's race. After the prosecutor has given his explanations, the burden falls upon defendant to show that the explanations are merely pretextual. *State v. Antwine,* at 64. The trial court must then consider all the relevant circumstances together with the prosecutor's explanations in making its final determination on defendant's claim of racial discrimination.

In the case presently before us, defendant has satisfied the first two parts of the *Batson* test. The prosecutor used three peremptory challenges against three black panel members. Defendant is also black. The second part affords defendant the above-referred to presumption. Our inquiry as to the sufficiency of defendant's initial showing rests on the third part of the test: whether these facts, along with other relevant circumstances, raise an inference of racial discrimination. To assist trial courts in deciding whether a defendant has made the requisite showing, the Court suggested that a pattern of strikes against black jurors might, but does not necessarily, give rise to an inference of discrimination. *Batson,* 106 S.Ct. at 1723. The prosecutor's statements and questions on voir dire may also support or refute an inference of discriminatory purpose. *Id.*

The trial court did not make an initial finding of prima facie racial discrimination to warrant further inquiry; nonetheless, the prosecutor offered explanations for striking the three black panel members. The prosecutor struck Idolas Sanders, a black male, because Sanders expressed doubt about being able to consider the death penalty. Delores Williams, a black female, was struck based on the prosecutor's stated strategy of striking younger venire members with less life and work experience because older and more mature jurors would tend to be more sympathetic to the elderly victim of this crime. The prosecutor followed this same strategy in striking Roger Sales, an unemployed black male. The prosecutor further supported the validity of his strategy by pointing to white panel members whom he struck in following that strategy. This type of strategy draws upon the "prosecutor's legitimate 'hunches' and past experience" and is permissible, according to our supreme court, "so long as racial discrimination is not the motive." *State v. Antwine*, at 65. We also note that the prosecutor could have used a peremptory against the black alternate but chose not to do so. This fact tends to refute any inference of discrimination.

Defendant vigorously attacks the prosecutor's explanation for striking Williams and Sales.[1] Defendant claims that the prosecutor's explanation for striking Williams and Sales equally applied to white panel members who were not challenged, and consequently, indicates racial discrimination in the jury selection process. *See State v. Butler*, 731 S.W.2d 265 (Mo.App., W.D.1987). Specifically, defendant claims that white panel members Carla Burnham and Richard McCloud fell into the same age group and had the same work experience as Williams and Sales, thus contradicting the prosecutor's strategy of eliminating younger, less experienced panel members. As previously noted, Sales was unemployed. Further, the prosecutor commented that during the morning voir dire session, Sales was wearing a pair of "shades" and a "pith helmet" which he did not remove after entering the courtroom, until he was asked. Although defendant argues in brief that the prosecutor failed to articulate a reason as to how this fact would suggest that Sales would be less favorable to the State, we believe this type of explanation also draws upon the prosecutor's experience and ability to follow "hunches" as approved in *State v. Antwine*. *State v. Antwine*, at 65. Because his elimination from the venire panel coincided with the prosecutor's stated strategy and he had characteristics unfavorable to the state which clearly distinguished him from the allegedly similarly situated white members, we exclude Sales from further discussion.

The record does not exhibit concrete, objective differences among Burnham, McCloud, and Williams. However, the *Batson* Court did not require objective reasons, but rather required that the explanations need only be legitimate, reasonably specific, and clear. *Batson*, 106 S.Ct. at 1724 n. 21; *State v. Antwine*, at 63–64, 65. Burnham had been employed part-time at an art gallery for six years, McCloud had worked for five years as an accountant for Anheuser–Busch, and Williams had been a clerk at a savings and loan institution for five years. The ages of these panel members are not part of the record.[2] Our supreme court expressed its approval of the "similarly situated" concept adopted by the western district in *State v. Butler*, but did

---

1. Further discussion of Sanders is unnecessary, since a peremptory challenge is appropriate where the panel member expresses a strong doubt about his ability to consider the death penalty.

2. Defendant has moved for leave to file affidavits of the panel member's ages or, alternately, photographs of the panel members. We cannot consider this information because it was not before the trial court and is not part of the record. Defendant's motion is denied. *See* Rule 30.04(a); *State v. Rowling*, 687 S.W.2d 246, 248 (Mo.App., E.D.1985); *State v. Mayfield*, 562 S.W.2d 404, 410 (Mo.App., E.D.1978). Defendant argues in brief that at the time of trial Burnham was 37, McCloud was 30, and Williams was also 30. Ironically, were we to accept this information as a factor, defendant's "similarly situated" argument would fail as to Burnham.

*not* hold that evidence of the State's failure to strike a similarly situated white venireman mandated reversal. *State v. Antwine,* at 65. Rather, the *Antwine* court stated that evidence of similarly situated whites remaining on the panel should be considered by the trial court in making its final determination. *Id.* Further, it would be difficult in this case to determine at the appellate level whether these panel members seemed of similar age or had similar work and life experience. Burnham and McCloud may have appeared to be older, more mature and articulate than Williams. The prosecutor may have preferred the work experience of an accountant and an art gallery worker rather than a bank clerk. The prosecutor may have been following a "hunch" that Burnham and McCloud were "more substantial people" than Williams. Subjective factors, which are necessarily inherent to the peremptory challenge, have been approved by our supreme court. *State v. Antwine,* at 64–65. Because of the superior vantage point of the trial court regarding such issues, the *Batson* Court expressed confidence in the ability of trial judges to make these determinations. *Batson,* 106 S.Ct. at 1723.

■ The trial judge viewed the panel members, listened to their responses, and analyzed the prosecutor's explanations. He accepted the prosecutor's reasons as legitimate and reasonably specific and found no discriminatory exclusion. Upon careful review of the voir dire transcript and record, we find no statements or questions by the prosecutor or other relevant circumstances to support an inference of discrimination. The trial court's finding of no discrimination is a finding of fact. *State v. Antwine,* at 66. "The trial judge's findings 'largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.'" *Id.* (quoting *Batson,* 106 S.Ct. at 1724 n. 21). We shall only set aside the trial court's finding of fact only if that finding is clearly erroneous. *State v. Antwine,* at 66. The trial court's ruling was not clearly erroneous. Point denied.

Defendant's second point on appeal involves the prosecutor's use of Verna Jones' prior inconsistent statement as substantive evidence. Defendant failed to object at trial, therefore review will be limited to plain error. Rule 30.20. Prior inconsistent statements are admissible as substantive evidence in capital murder trials under RSMo § 491.074 (1986). Defendant maintains that the trial court erred in admitting a letter written by Verna Jones because the prosecutor failed to lay a proper foundation.

■ In order to lay a proper foundation, the attorney must ask the witness if he or she made the statement. If the witness denies having made the statement or fails to recall it, the attorney may then introduce impeachment evidence. *State v. Ivicsics,* 604 S.W.2d 773, 780 (Mo.App., E.D.1980). In the case at bar, the prosecutor asked Verna Jones if she had informed anyone other than Larry Shaw of her intent to kill Mrs. O'Brien. Verna Jones denied telling anyone else. The prosecutor then introduced a letter written by Verna Jones to a prison inmate which contradicted her statement. We find that an adequate foundation was laid. Defendant's second point is denied.

In his next point, defendant asserts that the prosecutor improperly commented during closing argument on defendant's failure to testify. Again, no objection was made at trial so our review is limited to plain error. Rule 30.20. The relevant portion of the prosecutor's closing argument follows.

[Prosecutor]: It's also not a coincidence that when any group of people are charged acting with each other, that by the time we get to court they start pointing fingers in opposite directions; and they start saying other people did everything, and I didn't do much at all.

That's not coincidence at all. What else would you expect them to say. *Would you expect Craig to say,* I killed the old lady, and I wanted to help out my mother, and Gary Jackson. Of course not. (Emphasis added.)

Defendant asserts that an impermissible direct comment on defendant's failure to testify was made by using his name and the word "say."

To determine whether a remark amounts to a direct reference on defendant's failure to testify, the words "defendant" or "accused" and "testify" or their equivalents must be used. *State v. Hill*, 678 S.W.2d 848, 850 (Mo.App., E.D.1984). The prosecutor's remark does not meet this test. Further, the remark does not constitute an indirect comment. In order to be an impermissible indirect comment, the statement must, when viewed in context, cause the jury to infer that the remark referred to the defendant's failure to testify. *Id.* at 850. When the prosecutor's remarks are viewed in context, they relate to defendant's and his mother's pretrial statements to the police and were not a comment on defendant's decision not to testify. This point is denied.

In his fourth point, defendant asserts that the trial court erred in overruling his motion to suppress a tape-recorded statement made by him to the police. Defendant claims that, under the totality of the circumstances, the statement was involuntary and should have been excluded. The only evidence to support defendant's assertion is his own testimony. The police testified that they did not coerce defendant and the tape-recorded statement contained no evidence of coercion. The trial court viewed the evidence and found the statement to be voluntary. We defer to the trial court's ability to determine the credibility of witnesses and to weigh the evidence. *State v. Beck*, 687 S.W.2d 155, 158 (Mo. banc 1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). We find that there was sufficient evidence to support the trial court's ruling. *State v. Brown*, 698 S.W.2d 9, 11 (Mo.App., E.D. 1985). Defendant's fourth point is denied.

Defendant's final point involves the trial court's denial of defendant's request for a second psychiatric examination. Defendant made his request three days before trial and maintained that his current behavior indicated an inability to proceed to trial and a possible mental disease operating at the time of the offense.

Both the State and a defendant have the right to a second psychiatric evaluation if the request is filed within ten days of receiving the first report. RSMo § 552.030.3 (1986). The trial court has broad discretion to grant or deny a request for a second psychiatric evaluation that is filed out of time. *State v. Gilmore*, 681 S.W.2d 934, 940 (Mo. banc 1984). In the case before us, defendant requested his second evaluation a year after the first examination. The only evidence offered of a change in defendant's condition was defense counsel's observation that defendant had been behaving strangely. The trial court found this evidence insufficient to support a finding of a change in condition requiring a second examination. The trial court did not abuse its discretion in denying defendant's motion.

Finding each of defendant's points to be without merit, we affirm the decision of the trial court.

STEPHAN and SIMON, JJ., concur.