**STATE of Missouri,
Plaintiff–Respondent,**

**v.**

**Jerry TAYLOR, Defendant–Appellant.**

**No. 51235.**

Missouri Court of Appeals,
Eastern District,
Division Eight.

Feb. 9, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 8, 1988.

Application to Transfer Denied
April 19, 1988.

Holly G. Simons, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GARY M. GAERTNER, Judge.

Defendant Jerry Taylor appeals from his conviction by a jury of first degree murder, RSMo § 565.020 (1986). Defendant re-ceived a sentence of life imprisonment without eligibility for parole. On appeal, defendant argues that the trial court erred in: (1) denying defendant's motion to quash the jury panel based on the prosecuting attorney's allegedly racially discriminatory use of peremptory challenges; (2) denying his motion for judgment of acquittal at the close of all evidence because the State presented insufficient evidence to prove de-fendant's deliberation and knowledge that his actions were practically certain to cause death; and (3) allowing the prosecutor on redirect examination to elicit testimony from the victim's mother regarding past medical care of the victim. Finding no error in the trial court proceedings, we affirm.

On December 22, 1984, Sherrian Moore and her seventeen month old daughter Ash-ley, the victim, were staying in defendant's room at defendant's parent's residence in west St. Louis. Sherrian and defendant had been dating for several months. Sher-rian was pregnant with defendant's child. At some point in the afternoon defendant brought the victim downstairs to see Santa Claus. When defendant later returned to his room he told Sherrian that the victim was downstairs with the other children. Defendant left the room and returned some time after dark with the victim. The victim had bruises all over her body. Her eyes were rolling and she was mumbling. De-fendant laughed and said the victim was drunk. Defendant told the victim's mother that the victim had fallen while playing with the children. Defendant and the vic-tim's mother brought the victim to the hos-pital where efforts to revive her were fu-tile. The victim died of internal bleeding.

A subsequent autopsy showed that the victim had blood clotted under her scalp and bruises on her head, face, chest, abdo-men, back, and limbs. There was a tear under the victim's lip with bruising of the upper and lower lips. Her tenth rib was broken and the lung was cut. Her heart showed bruises on the surface. She had three blood clots in her abdominal cavity. The liver and spleen were torn. There was hemorrhaging in the soft tissue surround-

ing the pancreas and kidneys. The autopsy revealed twenty-one or twenty-two points of injury. The victim also had .44 milligrams of alcohol in her blood.

The night of the murder the police conveyed both defendant and the victim's mother to the police station for interrogation. After having been informed of his constitutional rights pursuant to *Miranda*, defendant admitted in a taped statement that he had used a belt to punish the victim. He further confessed that he slapped the victim on the front and back and then she fell while in the basement. At trial defendant claimed that the confession was coerced by the police, and further that he was attempting to protect the victim's mother. Defendant testified at trial that the victim was injured while in her mother's care. The jury found defendant guilty of murder in the first degree.

In his first point on appeal, defendant contends that the trial court erred in denying his motion to quash the jury panel. Defendant alleges that the prosecutor used his peremptory challenges against members of defendant's race motivated solely by racial discrimination. Such use of peremptory challenges has been held unconstitutional. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986); *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987); *State v. Jones,* 747 S.W.2d 229 (Mo.App., E.D.1988).

The prosecutor used seven peremptory strikes against seven black panel members and one strike against a black alternate. Defendant is also black. At the evidentiary hearing held after remand from this court,[1] the trial court made an initial finding of prima facie discrimination which required further inquiry. The prosecutor then offered race neutral explanations for each of the strikes used against blacks. The trial court considered each explanation offered by the State and found that the State rebutted the initial showing of prima facie discrimination. The trial court concluded that race was not the motivating factor in the peremptory challenges made by the State against blacks.

At the mandated evidentiary hearing the prosecutor gave the following race neutral explanations for the black members he removed from the panel. The prosecutor removed Thomas Neely, a black male, for several reasons. The prosecutor felt that Neely's occupation indicated that he apparently lacked the educational background the prosecutor would have liked insofar as the juror's ability to deal with the jury instructions. The prosecutor also expressed some concern about Neely being similar in age to defendant's father, a potential witness, and the possibility of Neely sympathizing with defendant's father. The prosecutor's primary reason for striking Neely was that Neely responded well to defense counsel and Neely seemed to be an assertive man who could have lead the jury. The prosecutor was unsure whether Neely was "with" him or not.

The prosecutor also struck Louise Hale, a black female, for several reasons. The prosecutor felt that since Hale was approximately the same age as defendant's mother and had children of similar age to defendant, Hale might identify with defendant's mother, a potential defense witness. Further, Hale had two nephews who had been convicted of crimes and she responded positively to defense counsel's questioning. Hale also affirmatively indicated her belief that a family member would not be less believable than another witness. But the prosecutor wanted jurors who would feel that family members are less believable since several of defendant's family members would be testifying.

The prosecutor removed Warzella Raymond, a black female, because she might

---

1. Defendant's trial occurred prior to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986), but was pending on appeal when *Batson* was handed down by the Supreme Court. Defendant's trial counsel properly objected and preserved the *Batson* issue for appeal. This court remanded the cause for an evidentiary hearing regarding the prosecutor's use of peremptory strikes against members of defendant's race. *See State v. Taylor,* 747 S.W. 2d 146 (Mo.App., E.D.1987). We now review defendant's *Batson* claim in light of the voir dire and the evidentiary hearing.

have identified with defendant's mother and had used a belt to discipline children. The prosecutor wanted to eliminate those jurors who had used a belt to discipline children since defendant had used a belt on the victim. Further, Raymond appeared inattentive. As an additional consideration, the prosecutor pointed to the fact Raymond initially expressed that she might believe defendant was guilty if he did not testify. Although Raymond was later rehabilitated, the prosecutor suspected that defense counsel had an ulterior motive for not moving to strike her for cause.

The prosecutor considered many factors in making his decision to strike Janet Parks, a black female. The prosecutor thought Parks might be favorable to the State because she was a professional and might relate to the victim's mother, the State's key witness. But the prosecutor felt that middle aged women could often be overly critical of other women and that Parks might be too critical of the victim's mother in this case. (For example, the victim's mother should not have placed herself in the situation that lead to the victim's death). Parks brother was a police officer which the prosecutor found to be a plus, her ex-husband was a police officer which he felt was a minus. Parks also exhibited what the prosecutor perceived as negative body language. Parks also wavered as to the State's and defendant's respective burdens of proof. The prosecutor felt that Parks was assertive and thought Parks might lead the jury. As previously stated, the prosecutor did not want anyone leading the jury.

The prosecutor struck Mable Long, a black female, because she might identify with defendant's mother and had used a strap to discipline a child. The prosecutor also thought Long was inattentive. The prosecutor removed Lula Hunter, a black female, because she might have identified with defendant's mother and had used a belt to discipline children. Hunter was also overweight, an attribute the prosecutor did not favor in a juror. The prosecutor also removed Louise Moore, a black female, be-

cause she might have identified with defendant's mother and had used a belt to discipline children. The prosecutor felt Moore dressed unusually, a fact that caught his attention.

The prosecutor used his alternate strike against Harold Gill, a black male. The prosecutor feared that Gill might identify with defendant's father. The prosecutor also stated that he generally removed federal employees, and more specifically postal workers. Additionally, the prosecutor did not believe Gill's response to a question.

Defendant attacks the prosecutor's explanations based on the prosecutor's failure to strike allegedly similarly situated white jurors. *See State v. Butler*, 731 S.W.2d 265 (Mo.App., W.D.1987). Specifically, defendant describes in brief eleven white jurors who were approximately the same age as defendant's mother or father and had children approximately the same age as defendant, thus purporting to negate the prosecutor's "identify with" defendant's mother or father explanations. Defendant also points to the prosecutor's failure to strike two white jurors who had sons accused of crimes, a white postal worker, and two white jurors with similar work experience to black juror Thomas Neely.

█ Although the "identify with" reason might apply to white jurors who were not removed, the prosecutor provided other legitimate, specific and clear explanations for each of the black jurors who were struck for that reason. For example, four blacks struck by the prosecutor because he feared they might identify with defendant's mother had also used a belt or strap to discipline a child. Similarly, defendant argues that since the prosecutor struck Gill because he was a postal worker he should have struck white panel member Burns. But the prosecutor also stated that he did not believe Gill's response to a question. Even applying the *Butler* standard, we do not believe that the defendant made a sufficient showing to conclude that the State failed to strike similarly situated white pan-

el members.[2] Further, as our supreme court pointed out, evidence of the failure to strike a similarly situated white juror does not mandate reversal, rather it is a factor to be considered by the trial court in making its final determination. *State v. Antwine*, 743 S.W.2d at 65; *State v. Jones*, 747 S.W.2d at 233. We also note that the prosecutor's reasons for striking two white panel members coincided with his reasons given for striking black panel members.

The *Antwine* court also directed us to consider the racial context of the case in our review of the trial court's findings. *State v. Antwine*, 743 S.W.2d at 64–65. The defendant in this case is black. The victim was black. The victim's mother and other key witnesses who testified at trial are black. Therefore the case was not particularly susceptible to racial discrimination, thus discounting any advantage that might be perceived in striking blacks from the jury. *Id.*

■ The trial judge was present at the voir dire, viewed the panel members and listened to their responses to questions. He analyzed the prosecutor's race neutral explanations offered at the hearing and accepted them as legitimate and reasonably specific. He found no discriminatory exclusion. The trial court's finding of no discrimination is a finding of fact. *Id.* at 66; *State v. Jones*, 747 S.W.2d at 233. We shall set aside the trial court's finding only if that finding is clearly erroneous. *State v. Antwine*, 743 S.W.2d at 66; *State v. Jones*, 747 S.W.2d at 233. The trial court's finding was not clearly erroneous. Point denied.

■ In his second point on appeal defendant alleges that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence. Defendant argues that the State failed to present sufficient evidence that defendant knew his conduct was practically certain to cause the victim's death or that defendant deliberated upon his actions prior to the murder. Initially, we note that when reviewing the sufficiency of the evidence to support a conviction we view the evidence in the light most favorable to the verdict together with all reasonable inferences. *State v. McDonald*, 661 S.W.2d 497, 500 (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985).

■ As previously stated, examination of the victim's body revealed multiple injuries, internal and external. The victim received twenty-one or twenty-two blows to the body resulting in her death from interabdominal bleeding. The jury could have inferred from the seriousness of the victim's injuries that defendant knew his actions were practically certain to cause the victim's death. *State v. Bolder*, 635 S.W.2d 673, 680 (Mo. banc 1982), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). Similarly, a finding of deliberation by the defendant may be inferred from the evidence and circumstances surrounding the murder. *Id.* Defendant removed the victim from the presence of her mother and his relatives, for the purpose of committing the murder. Defendant inflicted multiple injuries upon the victim. The victim's mother testified that defendant laughed when he returned the severely beaten child to her. We believe that the jury could reasonably infer from the evidence that defendant deliberated and knew that his actions were practically certain to cause the victim's death. Point denied.

In his final point on appeal, defendant alleges that the trial court improperly allowed the prosecutor to elicit irrelevant evidence that was beyond the scope of cross-examination on redirect examination of the victim's mother. On cross-examination of the victim's mother defense counsel inquired as to a prior incident in which the victim had injured herself getting out of the bathtub while in her mother's care. On redirect examination the prosecutor began to elicit testimony from the victim's mother regarding medical care the mother had ob-

---

2. Although the prosecutor was not afforded the opportunity in this case, we believe it would be helpful if the prosecutor were allowed to give positive reasons for keeping a white juror when a defendant makes a "failure to strike similarly situated whites" allegation.

tained for the child. Defense counsel objected stating that the line of questioning as to medical care unrelated to the murder was irrelevant and medical care other than that involved with the bathtub incident was beyond the scope of cross-examination. The trial court overruled the objection and permitted the line of questioning. The trial court ruled that the prosecutor should be allowed to show that the mother had provided good care in order to rebut any negative inherence raised on cross-examination about the bath tub injury.

 Controlling the scope of redirect examination rests within the sound discretion of the trial court. We will only reverse upon a showing that the trial court abused that discretion. *State v. Neverls*, 702 S.W.2d 901, 905 (Mo.App., E.D. 1985). Further, we will not disturb the trial court's ruling unless it is manifest that defendant was prejudiced thereby. *State v. Thomson*, 705 S.W.2d 38, 40 (Mo.App., E.D. 1985). We find no abuse of discretion nor prejudice. Defendant's third point is denied.

Finding defendant's arguments to be without merit, we affirm his conviction.

SMITH and CRIST, JJ., concur.