**STATE of Missouri, Respondent,**

v.

**Raymond HIGGINBOTHAM, Appellant.**

**No. 54307.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 24, 1989.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Feb. 15, 1989.

Application to Transfer Denied
March 14, 1989.

Shakespeare, *Romeo and Juliet* II, ii, 43.

Holly G. Simons, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Defendant, Raymond Higginbotham, appeals his convictions by a jury for second degree murder, in violation of RSMo § 565.021 (1986), and for armed criminal action, in violation of RSMo § 571.015 (1986). He was sentenced to twenty-five years imprisonment for second degree murder and five years imprisonment for armed criminal action, to be served consecutively. Defendant alleges three claims of error on appeal. Defendant argues the trial court erred in finding that he failed to prove a *prima facie* case of purposeful discrimina-tion under *Batson* in the State's use of its peremptory challenges to the venire. Defendant also alleges the trial court erred in sustaining a challenge for cause requested by the State. Finally, defendant maintains the trial court erred in admitting rebuttal testimony offered by the State. Finding defendant's contentions to be without merit, we affirm.

The sufficiency of the evidence is not in dispute. Viewed in the light most favorable to the verdict, the evidence adduced at trial reveals the following: On October 4, 1986, at approximately 5:00 p.m. defendant went to the house where Steven Dupree resided; Dupree resided at the home of his girlfriend's mother, Ms. Toler. Defendant spoke briefly with Ms. Toler and then left. He returned at approximately 9:00 p.m. and spoke with Dupree. After defendant left, Dupree told one of Ms. Toler's daughters that Dupree had taken money that defendant owed Dupree. Defendant went to the house a third time with a rifle. He entered the kitchen, struggled with Dupree and fired two shots. Defendant stated, "Give me my money," to which Dupree respond-ed, "It's in my back pocket." The struggle continued into an adjacent bedroom where defendant pushed Dupree onto the bed. Defendant shot Dupree two more times. Defendant then ran from the house. Du-pree was pronounced dead upon arrival at a hospital.

On October 5, 1986, defendant surren-dered to the police. He stated he had entered the house with a rifle after Dupree had taken his money and that he had shot Dupree twice in the kitchen. He indicated that Dupree had no weapon. Also on Octo-ber 5, 1986, the police recovered the rifle used in the shootings at a location de-scribed by defendant. They also found an unloaded tear gas gun in the kitchen of the house where Dupree was murdered.

Defendant, Dupree and Bernard Toler, the brother of Dupree's girlfriend, had been arrested several weeks prior to the murder for the robbery of Keith Swift. However, the three men were released be-cause of insufficient evidence. The rob-

bery led to defendant's car being towed; Dupree paid $65.00 to obtain the release of defendant's car. At trial, defendant denied involvement in the robbery. He called Keith Swift as a witness who testified defendant was not involved. The State then called Police Officer Lalumandier as a rebuttal witness regarding defendant's involvement in the robbery. Further facts as to this testimony will be set forth when we discuss defendant's third point.

At the conclusion of voir dire the State exercised six of its seven peremptory challenges to remove black venire panel members. The jury, as finally constituted, contained two black jurors and a black alternate. The trial court overruled defense counsel's objection to the State's use of its peremptory challenges to strike black venire members, finding defendant had not proved a *prima facie* case as required by *Batson.*

In his first point, defendant claims that the trial court clearly erred in finding that he did not make a *prima facie* case of purposeful discrimination in the State's use of its peremptory challenges. The United States Supreme Court in *Batson* sets forth the method by which a court is to determine whether a prosecutor exercised his peremptory challenges in a racially discriminatory manner. The Court's analysis begins with a three part test to discern whether a prosecutor's use of peremptory challenges creates a *prima facie* showing of purposeful discrimination. First, the defendant must show that he is a member of a cognizable racial group and that the prosecutor has exercised his peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant may rely on the fact that peremptory challenges constitute a jury selection practice which permits discrimination. And third, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used the practice of jury selection so as to discriminate on the basis of race. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712 at 1723, 90 L.Ed.2d 69 (1986). If a defendant makes a *prima facie* showing of purposeful discrimination, the burden shifts to the

State to come forward with a neutral explanation for challenging black jurors. *Id.* The Missouri Supreme Court in *State v. Antwine,* 743 S.W.2d 51, 64 (Mo. banc 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), "expanded upon *Batson* by directing trial courts to consider, in the process of determining the existence of the third element of the *prima facie* case, the prosecutor's explanations of his peremptory strikes." *State v. Griffin,* 756 S.W.2d 475, 481 (Mo. banc 1988).

This court now takes cognizance of the standard of review to be applied to the trial court's finding that defendant did not prove a *prima facie* case of purposeful discrimination. Initially, we note that such a finding is a finding of fact. *State v. Brinkley,* 753 S.W.2d 927, 930 (Mo. banc 1988). And, in a *Batson* context, because the trial court's findings "largely will turn on [an] evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Batson,* 106 S.Ct. at 1724. Thus, the trial court's finding in the case before us will not be set aside unless it is determined to be clearly erroneous. *Antwine,* 743 S.W.2d at 66.

In the present case, defendant satisfied the first two prongs of the *Batson* test for whether a *prima facie* case of purposeful discrimination has been made. Defendant is black and the State exercised six peremptory challenges against six black members of the venire. As well, defendant is entitled to the above-referred to presumption. Our inquiry is therefore restricted to the third prong of the test: whether these facts and any other relevant circumstances raise an inference of racial discrimination.

■ As previously noted, the State exercised six of its seven peremptory challenges to remove black persons from the venire; two black jurors and a black alternate were on the jury as finally constituted. The Missouri Supreme Court has declared, "that three blacks who could have been peremptorily struck by the State were not so stricken undercuts any inference of impermissible discrimination." *State v. Griffin,* 756 S.W.2d at 482. The defen-

dant, the victim, and the principal witnesses were black. Thus, the racial context of the case "discounts 'any advantage that a discriminating prosecutor might perceive in striking blacks from the jury.'" *Antwine*, 743 S.W.2d at 67, *quoting United States v. Mathews*, 803 F.2d 325, 332 (7th Cir.1986). In addition, a consideration of the State's reasons for peremptorily striking the six black persons raises no inference of discrimination. At the outset, we note *Antwine's* recognition of the fact that the exercise of peremptory challenges is the result of the subjective analysis of a wide variety of character and personality traits perceived by counsel and *Antwine's* directive that *Batson* does not prohibit the State from challenging a person on the basis of a "hunch" so long as racial animus is not the motive. *Antwine*, 743 S.W.2d at 67.

The State struck the following blacks: Haynes, Logan, Troupe, Mikell, Gooden and Simmons. Counsel for the State stated he struck Haynes and Logan because they indicated during voir dire that they would not consider defendant's prior convictions in any regard, including credibility. Although the cold record does not especially well support this reason as to Haynes, counsel did offer other reasons for striking Haynes, stating that because of Haynes' facial expressions during voir dire and the way Haynes related with defense counsel Haynes was an unacceptable juror. As to Logan, Logan stated that defendant's prior convictions were completely "irrelevant" to the present case. As to Troupe, we initially observe the trial court's specific finding that "while ... superficially her responses in the cold typed script may not appear significant ... her demeanor certainly gave me the impression that she was eager to disregard" any testimony offered by a police officer. We cannot find the State's reason for striking Troupe on the basis that she gave strong responses and facial expressions to whether or not she would believe a police officer was not legitimate. As to Mikell, a potential alternate juror, the State explained it was striking him because he did not appear sufficiently concerned

about his cousin's murder. As to Gooden, the State explained that it sought to strike him because he had not reported a robbery of which he was a victim, indicating little respect for the law. Finally, as to Simmons, the State explained it sought to strike her because she expressed dissatisfaction with the police department's investigation of her brother-in-law's murder. As we stated in *State v. Jones*, 747 S.W.2d 229, 233 (Mo.App., E.D.1988), the trial judge viewed the venire, listened to their responses, analyzed the State's explanations, and accepted the State's reasons as legitimate and reasonably specific. As in *Jones*, upon a review of the voir dire transcript, this court discerns no inference of discrimination from the State's questions or statements during voir dire. Thus, as we have found no other facts or relevant circumstances to support an inference of discrimination, the trial court did not clearly err in finding that defendant failed to prove a *prima facie* case of purposeful discrimination. This point is denied.

In his second point, defendant claims the trial court erred in sustaining the State's request to strike venire member Brown for cause. Brown was asked during voir dire whether she had ever been arrested and she denied having been. The State went on to then reveal that it had run an arrest record check on Brown and that she had been indeed arrested, but not convicted, for assault.[1] When she was later questioned about this, she admitted that she had been arrested but stated that she had not disclosed this because she felt "uneasy." The court sustained the State's motion to strike for cause because Brown's answer "created a serious concern about her ability to follow the court's instructions."

Defendant refers this court to RSMo § 610.100 which provides:

If any person is arrested and not charged with an offense against the law within thirty days of his arrest, official records of the arrest and of any detention or confinement incident thereto shall there-

---

1. The State stated it ran an arrest record check on ninety percent of the venire and that the

check disclosed two arrests of members of the venire.

after be closed records except as provided in section 610.120 (1986).[2]

The section goes on to provide that:

"no person as to whom such records have become closed records shall thereafter ... be held to be guilty of perjury or otherwise of giving a false statement by reason of his failure to recite or acknowledge such arrest or trial in response to any inquiry made of him ..." RSMo § 610.110.

■ Defendant does not maintain RSMo § 610.100 was violated when the State merely asked prospective jurors about past arrests. *See State v. Ruff*, 729 S.W.2d 556, 559 (Mo.App., E.D.1987). Instead, he argues the section was violated because the State ran arrest record checks on some members of the venire panel. However, this claim of error was not preserved for our review. For, defendant never brought the statute to the trial court's attention, either when defense counsel objected to the strike for cause of venire member Brown or in his motion for a new trial. Defendant's motion for a new trial states that he objects to the strike for cause of venire member Brown because "[t]he State was allowed to use its resources to selectively investigate the arrest and conviction records of potential jurors without notice to the defendant and without defendant having equal access to such resources," thereby denying defendant an equal opportunity to select a fair and impartial jury in violation of the state and federal constitutions. An issue not raised before the trial court is not preserved for appellate review. A trial court will not be convicted of error for a reason not presented to it but which, instead, is raised for the first time on appeal. *State v. Simms*, 643 S.W.2d 87, 89 (Mo. App., W.D.1982). *See also State v. Lint*, 657 S.W.2d 722, 724 (Mo.App., E.D.1983). This point is denied.

In his third point, defendant claims the trial court erred in admitting rebuttal testimony by police officer Lalumandier. The circumstances surrounding this testimony can be briefly summarized. On direct examination, defendant testified that on October 4, 1986, Dupree took money from defendant which he believed defendant owed him; and that he went to the house with a rifle to force Dupree to return the money. Defendant explained that Dupree had paid $65.00 to obtain the release of defendant's car after it was towed when defendant, Dupree and a third man were arrested for robbing Keith Swift. Defendant at trial denied involvement in the robbery. Defendant called Swift as a witness. Swift stated defendant had not participated in the robbery; that Dupree had been the sole felon. Defendant apparently injected this issue to show that his car had been towed because of Dupree's actions, as defendant allegedly was not involved in the robbery. In rebuttal, the State called police officer Lalumandier. Officer Lalumandier testified that Swift had initially told the police that defendant was a participant in the robbery.

■ Defendant challenges the trial court's decision to allow officer Lalumandier's testimony. We reiterate the principle that the determination as to the scope of rebuttal is a matter within the discretion of the trial court. *State v. Moiser*, 738 S.W. 2d 549, 565 (Mo.App., E.D.1987). Absent a gross abuse of discretion, this court will not reverse the trial court. *Id.* Officer Lalumandier's testimony served to disaprove Swift's testimony; as such it was proper rebuttal evidence. For, evidence offered in rebuttal is generally proper if it directly or by implication explains, counteracts, dispels or disproves a defendant's evidence. *State v. Roberts*, 709 S.W.2d 857, 868 (Mo. banc 1986). It is immaterial that the rebuttal evidence is offered with respect to a collateral issue, so long as the issue is first tendered by the defense during direct examination or is volunteered on

---

**2.** RSMo § 610.120 (1986) states the records "shall be available only to courts, administrative agencies, and federal agencies for purposes of prosecution, litigation, sentencing, parole consideration and to federal agencies for such investigative purposes as authorized by law or presidential executive order." The State in its brief argues the above language permits the State to run record checks as to prospective jurors for the purpose of aiding voir dire. In view of our subsequent analysis, this contention need not be addressed.

cross examination. *State v. Dunlap*, 706 S.W.2d 272, 275 (Mo.App., E.D.1986). This point is denied.

GRIMM, P.J., and KAROHL, J., concur.